UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DONALD KILLS WARRIOR,<br><br>    Defendant. | CR. 19-50163-JLV<br>CR. 22-50066-JLV<br><br>ORDER |

**INTRODUCTION**

Defendant Donald Kills Warrior filed motions to dismiss the indictments for failure to register as a sex offender in both cases. (CR. 19-50163, Docket 89, and CR. 22-50066, Docket 36).[1] Mr. Kills Warrior also moved to vacate the convictions and revocations of supervised release adjudications in CR. 12-50167 and CR. 16-50058. (CR. 19-50163, Docket 89). The motions were referred to United States Magistrate Judge Daneta Wollmann pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of April 1, 2018. The magistrate judge conducted an evidentiary hearing. (Dockets 92 & 95). Magistrate Judge Wollmann issued a report and recommendation ("R&R"). (Docket 93). The magistrate judge recommended the defendant's motions be denied. Id. at pp. 2 & 9. Mr. Kills Warrior timely filed his objections to the R&R. (Docket 94). For the reasons stated below, the defendant's objections are overruled and the R&R is adopted consistent with this order.

---

[1]Defendant's filings and the court activities in both cases are identical so the court will reference the entries in CR. 19-50163 throughout the remainder of this order.

**DEFENDANT'S OBJECTIONS**

Mr. Kills Warrior objects to the R&R for several reasons, summarized as follows:

1. The magistrate judge's reliance on <u>United States v. Wheeler</u>, 435 U.S. 313 (1978) and <u>Denezpi v. United States</u>, 142 S. Ct. 1839 (2022)[2] is misplaced.

2. In prosecuting Mr. Kills Warrior, the Oglala Sioux Tribe judiciary was acting under authority delegated by the United States Department of the Interior and the Bureau of Indian Affairs and not inherent authority.

(Docket 94). Defendant's numbered objections within these two principal challenges will be addressed.

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files a written objection to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." <u>Id.</u> The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." <u>Id.</u> <u>See</u> <u>also</u> Fed. R. Crim. P. 59(b)(3). The court completed a *de novo* review of those portions of the R&R and the record before the magistrate judge. Unless otherwise indicated, the court's findings are consistent with the findings made by the magistrate judge.

---

[2]Both the magistrate judge and Mr. Kills Warrior mistakenly cited <u>Denezpi</u> at 142 U.S. <u>See</u> Dockets 93 at p. 5 and 94 at p. 5.

2

**FACTUAL BACKGROUND**

On September 16, 2007, Mr. Kills Warrior engaged in sexual contact with a child under 12 years of age.  (CR. 07-50116, Docket 51 at p. 1).[3]  The sexual assault occurred within the exterior boundaries of the Pine Ridge Indian Reservation near Porcupine, South Dakota.  Id. at pp. 1-2.  Mr. Kills Warrior is and was at all times an enrolled member of the Oglala Sioux Tribe ("OST").  Id. at p. 1.

On the same day, Mr. Kills Warrior was arrested by the OST law enforcement for sexual assault.  (CR. 19-50163, Docket 89-1 at p. 2).  On September 18, 2007, Mr. Kills Warrior pled guilty and was sentenced to six months custody in the OST Adult Correctional Facility.[4]  Id., Docket 89-2 at p. 1.

**CR. 07-50116**

On November 20, 2007, a federal grand jury indicted Mr. Kills Warrior for sexual contact in violation of 18 U.S.C. §§ 1153, 2244(a)(5) and 2246(3) for his

---

[3]In the subsequent federal prosecution, Mr. Kills Warrior executed a factual basis statement which Mr. Kills Warrior and his attorney stipulated to and the government agreed contained true facts.  See CR. 07-50116, Docket 51 at p. 1.

[4]On December 20, 2007, an associate judge of the OST Tribal Court reduced the sentence to time served with Mr. Kills Warrior being "placed on parole for the remainder of his sentence ending March 18, 2008."  (CR. 19-50163, Docket 89-2 at p. 1).

conduct on September 16, 2007. (Docket 1).[5] On December 23, 2008, Mr. Kills Warrior entered into a plea agreement with the government in which he would plead guilty to count II of the superseding indictment (associated with the September 16, 2007, conduct). (Docket 49 at p. 2). A factual basis statement accompanied the plea agreement. (Docket 51). On April 28, 2009, Mr. Kills Warrior was sentenced to 30 months of imprisonment in the United States Bureau of Prisons ("BOP") together with five years of supervised release. (Docket 65). Following his release from the BOP, on May 15, 2011, Mr. Kills Warrior's supervised release was revoked and he was sentenced to 12 months of custody together with an additional period of 36 months of supervised release. (Docket 80).

**CR. 12-50167**

On November 19, 2012, a grand jury indicted Mr. Kills Warrior for failure to register under the Sex Offender Registration and Notification Act in violation of 18 U.S.C. § 2250(a). (Docket 1). Mr. Kills Warrior signed an amended plea agreement as to the sole count of the indictment and a factual basis statement. (Dockets 20 and 22). On April 29, 2013, the court sentenced Mr. Kills Warrior to 15 months of BOP custody followed by five years of supervised release. (Docket 26). Following his release from the BOP, on January 15, 2015, Mr.

---

[5]On July 23, 2008, a superseding indictment was filed modifying the charge against Mr. Kills Warrior related to the September 16, 2007, conduct to abusive sexual contact and adding a separate count of abusive sexual contact involving a different child. (Docket 07-50116, Docket 26).

4

Kills Warrior's supervised release was revoked and he was sentenced to 5 months of custody together with an additional period of five years of supervised release.  (Docket 46).  On April 29, 2022, a second amended petition to revoke supervised release was filed.  (Docket 98).  The second amended petition remains pending awaiting resolution of Mr. Kills Warrior's subsequent federal charges.

**CR. 16-50058**

On April 19, 2016, a grand jury indicted Mr. Kills Warrior for failure to register under the Sex Offender Registration and Notification Act in violation of 18 U.S.C. § 2250(a).  (Docket 1).  Mr. Kills Warrior signed a plea agreement and a factual basis statement.  (Dockets 19 and 20).  On February 3, 2017, the court sentenced Mr. Kills Warrior to 30 months of BOP custody to be followed by five years of supervised release.  (Docket 36).  On April 29, 2022, a second amended petition to revoke supervised release was filed.  (Docket 71).  The second amended petition remains pending awaiting resolution of Mr. Kills Warrior's subsequent federal charges.

**CR. 19-50163**

On December 17, 2019, a grand jury indicted Mr. Kills Warrior for failure to register under the Sex Offender Registration and Notification Act in violation of 18 U.S.C. § 2250(a).  (Docket 1).  This indictment is the subject of Mr. Kills Warrior's motion to dismiss.  (Docket 89).

**CR. 22-50066**

On April 21, 2022, while the indictment in CR. 19-50163 was pending, a grand jury indicted Mr. Kills Warrior for failure to register under the Sex Offender Registration and Notification Act in violation of 18 U.S.C. § 2250(a). (Docket 1). This indictment is the subject of Mr. Kills Warrior's motion to dismiss. (Docket 36).

## RESOLUTION OF DEFENDANT'S OBJECTIONS

1. THE MAGISTRATE JUDGE'S RELIANCE ON <u>WHEELER</u> AND <u>DENEZPI</u> IS MISPLACED.

The magistrate judge properly identified the double jeopardy issue presented as "whether the tribe's authority to prosecute tribal members on tribal land came from its inherent authority or from authority delegated to it by the federal government." (CR. 19-50163, Docket 93 at p. 5). The magistrate judge applied <u>Wheeler</u> and <u>Denezpi</u> in its analysis of this issue. <u>Id.</u> at pp. 5-7.

Mr. Kills Warrior first claims the magistrate judge's reliance on <u>Wheeler</u> is misplace because <u>Wheeler</u> was "primarily concerned with the lesser-included offenses and not the issue raised herein, the double jeopardy clause." (Docket 94 at p. 1). Defendant also asserts the magistrate judge's reliance on <u>Wheeler</u> is mistaken as the Navajo Tribe is not subject to the Indian Reorganization Act of 1934. <u>Id.</u> at p. 5.

Mr. Kills Warrior's arguments are without merit. In <u>Wheeler</u>, the defendant was arrested by a Navajo tribal police officer for disorderly conduct.

6

Id. at 1081.  Mr. Wheeler pled guilty to that offense and another "charge of contributing to the delinquency of a minor," both in violation of the Navajo Tribal Code.  Wheeler, 435 U.S. at 315.  One year later, a federal grand jury charged Mr. Wheeler with statutory rape in the United States District Court for the District of Arizona.  Id.  The defendant moved to dismiss the statutory rape indictment arguing "contributing to the delinquency of a minor was a lesser included offense of statutory rape."  Id. at 316.  In the federal case, both the district court and the United States Court of Appeals for the Ninth Circuit held the tribal court and the district court were "not arms of separate sovereigns" and "the Double Jeopardy Clause barred the [defendant's] trial."  Id.

  The Wheeler Supreme Court found that "[i]t is evident that the sovereign power to punish tribal offenders has never been given up by the Navajo Tribe and that tribal exercise of that power today is therefore the continued exercise of retained tribal sovereignty."  Id. at 323-24.  "[F]ar from depriving Indian tribes of their sovereign power to punish offenses against tribal law by members of a tribe," the court found "Congress has repeatedly recognized that power and declined to disturb it."  Id. at 325.  "If Navajo self-government were merely the exercise of delegated federal sovereignty," the court concluded "such a delegation should logically appear somewhere.  But no provision in the relevant treaties or statutes confers the right of self-government in general, or the power to punish crimes in particular, upon the Tribe."  Id. at 327.

7

After discussing the Bureau of Indian Affairs "Code of Indian Tribal Offenses and [the] Court of Indian Offenses for the reservation," as well as "the Indian Reorganization Act of 1934," and "the Indian Civil Rights Act of 1968," the Wheeler court concluded "none of these laws created the Indians' power to govern themselves and their right to punish crimes committed by tribal offenders." Id. "In sum," the court held "the power to punish offenses against tribal law committed by Tribe members, which was part of the Navajos' primeval sovereignty, has never been taken away from them, either explicitly or implicitly, and is attributable in no way to any delegation to them of federal authority." Id. at 328. The Navajo Tribe exercised its judicial authority "as part of its retained sovereignty and not as an arm of the Federal Government." Id. The Wheeler court concluded that "[s]ince tribal and federal prosecutions are brought by separate sovereigns, they are not 'for the same offence,' and the Double Jeopardy Clause . . . does not bar one when the other has occurred." Id. at 313-14.

Mr. Kills Warrior also claims the magistrate judge's reliance on Denezpi is misplaced because the Mountain Ute Tribe does not follow and is not "subject to the Indian Reorganization Act." (Docket 94 at p. 5). Denezpi is different from Wheeler in that the issue before the court was whether the Double Jeopardy Clause was violated when a "single sovereign (the United States) . . . enforced its own law (the Major Crimes Act) after having separately enforced the law of another sovereign (the Code of the Ute Mountain Ute

8

Tribe)." Denezpi, 142 S. Ct. at 1843. The Denezpi court resolved this issue by determining that the Double Jeopardy Clause did "not bar successive prosecutions by the same sovereign." Id. at 1855. While most tribes established their own judicial systems under the Indian Reorganization Act, the Ute Mountain Ute Tribe continued to participate in the Code of Federal Regulations court ("C.F.R. court"), in which the tribe's own adopted code is enforced. Id.

The Denezpi court held the court's "reasoning in Wheeler controls here." Id. at 1845. "The Ute Mountain Ute Tribe, like the Navajo Tribe in Wheeler, exercised its 'unique' sovereign authority in adopting the tribal ordinance. . . . Likewise, Congress exercised the United States' sovereign power in enacting the federal criminal statute." Id. The court concluded "[t]he two laws, defined by separate sovereigns, therefore proscribe separate offenses. Because Denezpi's second [federal criminal code] prosecution did not place him in jeopardy again 'for the same offence' [the tribal code prosecution], that [federal] prosecution did not violate the Double Jeopardy Clause." Id. "Denezpi's single act led to separate prosecutions for violations of tribal ordinance and a federal statute. Because the Tribe and the Federal Government are distinct sovereigns, those 'offence[s]' are not 'the same.' " Id. at 1849. For this reason, the Denezpi court concluded the "second prosecution . . . did not offend the Double Jeopardy Clause." Id.

9

It matters not in the comparative analysis of Wheeler and Denezpi what role the Indian Reorganization Act played in the configuration of the tribal code and the tribal court which prosecuted the defendant.  The fact that the Navajo Tribe and the Ute Mountain Ute Tribe courts were organized under different legislation than the Oglala Sioux Tribe does not change the application of Wheeler and Denezpi to Mr. Kills Warrior's case.

Defendant's first objection is overruled.

2. IN PROSECUTING MR. KILLS WARRIOR THE OGLALA SIOUX TRIBE JUDICIARY WAS ACTING UNDER AUTHORITY DELEGATED BY THE UNITED STATES DEPARTMENT OF THE INTERIOR AND THE BUREAU OF INDIAN AFFAIRS AND NOT INHERENT AUTHORITY

It is Mr. Kills Warrior's "[p]osition . . . that the entire government of the Oglala Sioux Tribe, including its judiciary, is acting under authority delegated to it by the United States government through the Department of the Interior and the Bureau of Indian Affairs."  (Docket 94 at p. 3).  He asserts the tribe's government "came in to being after the passage of the Indian Reorganization Act in 193[4]. . . . The tribal government, including the tribal court, of the Oglala Sioux Tribe is a facsimile of federal templates imposed on tribes by the United State government."  Id. at p. 4.  For this reason, Mr. Kills Warrior contends "it is a fiction for the Court in Wheeler to assert that there has been a continuous or unbroken chain of tribal sovereignty from pre-European times to the present, which extends to tribal sovereignty over criminal prosecutions."  Id.  "The entire notion of inherent sovereignty is a falsehood," in Mr. Kills

Warrior's view "as it presumes that Tribes had, and continue to have, the ability to legally and enforceably act independent of the authority delegated b[y] the federal government."  Id.

The magistrate judge's finding that defendant's "argument contradicts the Supreme Court's finding in Wheeler and Denezpi that the tribe retained inherent sovereign authority," (Docket 93 at p. 7), is further supported by Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 (1978).  In Martinez, the Supreme Court acknowledged that "[a]s separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."  Id. at 56.  The tribes enjoy "the powers of local self-government."  Id. (citing Talton v. Mayes, 163 U.S. 376, 384 (1896)).  See also United States v. Lara, 541 U.S. 193, 210 (2004) (The Double Jeopardy Clause does not prohibit the government from prosecuting the defendant for a discrete federal offense even though he pled guilty to a similar tribal offense); United States v. Antelope, 548 F.3d 1155, 1157 (8th Cir. 2008) (Lara forecloses defendant's argument that because he pled no contest to a similar charge related to the same incident in tribal court the Double Jeopardy Clause bars the federal prosecution.).

Defendant's argument opposing the OST's inherent sovereign authority is without merit.

Defendant's second objection is overruled.

**ORDER**

Based on the above analysis, it is

ORDERED that the defendant's objections (CR. 19-50163, Docket 94 and CR. 22-50066, Docket 41) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (CR. 19-50163, Docket 93, and CR. 22-50066, Docket 40) is adopted.

IT IS FURTHER ORDERED that defendant's motions to dismiss (CR. 19-50163, Docket 89, and CR. 22-50066, Docket 36) are denied.

IT IS FURTHER ORDERED that defendant's motions to vacate the convictions and other adjudications in CR. 12-50167 and CR. 16-50058 (CR. 19-50163, Docket 89, and CR. 22-50066, Docket 36) are denied.

A scheduling order will be entered in each case.

Dated July 14, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE